IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

VARSHA VAGHELA,

                Plaintiff,

v.                              CIVIL ACTION NO. 2:17-cv-00327

HUNTINGTON BANCSHARES, INCORPORATED,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Huntington Bancshares, Inc.'s motion for summary judgment.[1] (ECF No. 24.) For the reasons discussed more fully below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion. (ECF No. 24.)

---

[1] Also pending before the Court is Defendant's Motion to Strike Affidavits that Plaintiff attached to her response to Defendant's motion for summary judgment. (ECF No. 27.) Defendant argues that the affidavit of Kevin C. McGill ("McGill") that Plaintiff submitted to this Court contains statements that Defendant argues are inadmissible hearsay and exceed McGill's personal knowledge. (*See* ECF No. 28 at 1–2.) Defendants further argue that the affidavits of Lisa Saunders and Mary Bradley suffer from the same alleged ills. (*See id.* at 2.). Plaintiff contends that any hearsay in the affidavits are admissible under the business records exception. (*See* ECF No. 30 at 1.) The Court **FINDS** that the hearsay contained in the three affidavits do not fall under the business exception rule. Therefore, the Court **GRANTS IN PART** Defendant's motion and strikes the three affidavits as to any statements where the affiants reference what they were told. *See Greensboro Prof. Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) ("[Hearsay] is neither admissible at trial nor supportive of an opposition to a motion for summary judgment."). Accordingly, the Court will not consider these parts of the affidavits. However, the Court does not find that the affidavits lack personal knowledge to the extent the affiants are testifying to their experience. Accordingly, the Court **DENIES IN PART** Defendant's motion insofar as it seeks to strike the affidavits for lack of personal knowledge.

1

## I. BACKGROUND

Beginning in May 2011, Plaintiff was employed at Defendant's West Side Branch in Charleston, West Virginia, first as a Personal Banker, then as an Interim Branch Manager, and, most recently, as a Branch Manager. (*See* ECF No. 1 at ¶¶ 5–7 (Compl.).) Plaintiff consistently had high performance reviews that led to these successive promotions. (*See* ECF No. 26 at 9.)

On or about September 21, 2015, Plaintiff informed her District Manager, Tom Dixon ("Dixon"), that she had compliance concerns about fellow banker Michael Mullins ("Mullins"). (*See* ECF No. 25 at 2.) Specifically, Plaintiff complained to Dixon that Mullins had approached her a month previously and informed her that he had prepared a loan for disbursement without providing the borrower three days to rescind their decision to borrow as required by state and federal consumer protection statutes. (*See* ECF No. 26 at 2.) Plaintiff also states that she requested that Defendant rectify the error. (*See id.* at 9.)

As a result, the Branch Manager at Defendant's Downtown Branch, Jonathan Roop ("Roop"), conducted an investigation into Plaintiff's complaint. (*See* ECF No. 26 at 4.) Defendant states that during Roop's investigation he uncovered that Plaintiff notarized a deed without the customer being present and backdated a deed. (*See* ECF No. 25 at 2–3.) This was in violation of Defendant's policy and the West Virginia Notary Handbook. (*See id.* at 4.) As such, Plaintiff was subject to disciplinary action. (*See id.*)

Following the investigation, Dixon and Roop held a disciplinary meeting with Plaintiff and Mullins. (*See id.*) Plaintiff asserts that during the meeting Dixon said he did not believe the notarization issue was a major concern, but instead was a good learning opportunity. (*See id.*)

However, on October 13, 2015, Defendant notified Plaintiff that her employment was being terminated. (ECF No. 26 at 5.)

Plaintiff filed this action on January 9, 2017 against Defendant alleging discriminatory termination in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act") (Count I) and discriminatory discharge for reporting illegal disbursement of loan proceeds (Count II). Defendant subsequently filed the present motion for summary judgment. (ECF No. 25.) Plaintiff filed a timely response, (ECF No. 26), and Defendant filed a timely reply. (ECF No. 29.) As such, Defendant's motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various

3

documents submitted under request for production." *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III. DISCUSSION

As stated above, Plaintiff alleges claims for retaliatory discharge under Dodd-Frank and state law in her Complaint. Defendant seeks summary judgment on both of these claims. Therefore, the Court will address these claims separately beginning with Plaintiff's Dodd-Frank Act claim.

A. *Dodd-Frank Claim*

In Count I of her Complaint, Plaintiff alleges that Defendant terminated her due to her "efforts to report and to halt illegal and unethical practices by Defendant's loan officers that Plaintiff believed to be in violation of the Truth in Lending Act . . . ." (ECF No. 1 at ¶ 20.) In its motion for summary judgment, Defendant argues that Plaintiff cannot establish a prima facie case under the Dodd-Frank Act. (*See* ECF No. 25 at 7.) Specifically, Defendant argues that

4

Plaintiff cannot establish that the alleged protected activity she engaged in under the statute was a contributing factor in Defendant's decision to terminate her employment. (*See id.*)

The Dodd-Frank Act prohibits employers from taking adverse employment actions against any employee in three situations. *See Digital Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 769 (2018). Title 12 of the Dodd-Frank Act prohibits covered employers from terminating any employee who provides information regarding a violation of federal law subject to the jurisdiction of the Consumer Financial Protection Bureau ("the Bureau:"). *See* 12 U.S.C. § 5567(a)(1). It provides, in relevant part, the following:

> No covered person or service provider shall terminate or in any other way discriminate against, or cause to be terminated or discriminated against, any covered employee or any authorized representative of covered employees by reason of the fact that such employee or representative, whether at the initiative of the employee or in the ordinary course of the duties of the employee (or any person acting pursuant to a request of the employee), has—
>
> (1) provided, caused to be provided, or is about to provide or cause to be provided, information to the employer, the Bureau, or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of this title or any other provision of law that is subject to the jurisdiction of the Bureau, or any rule, order, standard, or prohibition prescribed by the Bureau . . . .

*Id.* For claims brought under this section, the plaintiff bears the burden of showing "that any behavior described in paragraphs (1) through (4) of subsection (a) was a contributing factor in the unfavorable personnel action alleged in the complaint." *Id.* at § 5567(c)(3)(B); *see also Yoder v. O'Neil Group, LLC*, 16-cv-0900, 2017 WL 6206074, at *4 (D. Md. Dec. 8, 2017).

To establish a prima facie case of retaliation a plaintiff must show by a preponderance of the evidence the following: "(1) he engaged in protected activity; (2) the employer knew or suspected, either actually or constructively, that he engaged in the protected activity; (3) he

5

suffered an unfavorable personnel or employment action; and (4) the protected activity was a contributing factor in the unfavorable action." *Id.* (citing *Rhinehimer v. U.S. Bancorp Invs., Inc.*, 787 F.3d 797, 805 (6th Cir. 2015)). The Fourth Circuit has held that courts may infer a causal connection if the employer takes adverse employment action against the employee shortly after learning of the protected activity. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogation on other grounds recognized by Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 192 (4th Cir. 2017). However, this "temporal proximity must be very close." *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). Once a plaintiff has established a prima facie case, the burden shifts to the defendant to demonstrate that it would have taken the same unfavorable employment action even absent the protected activity. *See id.* (quoting 12 U.S.C. § 5567(c)(3)(B)).

Here, Defendant argues that Plaintiff cannot show that her alleged protected activity contributed to her termination. Defendant argues that the Court should infer from Plaintiff's invocation of her Fifth Amendment privilege against self-incrimination, when asked about improperly notarizing documents, that Plaintiff cannot establish that she was terminated due to anything other than her falsely notarizing documents. (*See* ECF No. 25 at 9–12.) Defendant asserts that Plaintiff is using her Fifth Amendment privilege to support her burden of showing that her participation in the protected activity was causally connected to Defendant's reason for terminating her. (*See id.* at 12.)

However, Plaintiff does not rely on her invocation of her Fifth Amendment privilege to rebut Defendant's argument that she was terminated solely due to her violating notary and company policy. *See United States v. Certain Real Prop. And Premises Known as: 4003-4005*

*5th Ave., Brooklyn, NY*, 55. F.3d 78, 83 (2d. Cir. 1995) ("[T]he claim of privilege will not prevent an adverse finding or even summary judgment *if* the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation" (emphasis added)). Plaintiff asserts that the proximity in time between her engaging in the protected activity and her termination is sufficient circumstantial evidence to satisfy the evidentiary burden required for a prima facie case. (*See* ECF No. 26 at 9.)

Plaintiff complained of the alleged loan disbursement violations on September 21, 2015. (*See* ECF No. 26 at 9.) Less than a month later, on October 12, 2015, Plaintiff was notified she was terminated. The proximity between Plaintiff engaging in the protected activity and her termination is sufficiently close to create an inference that there is a causal connection between the protected activity and the termination. *See Yoder*, 2017 WL 6206074, at *8; *see also Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that causation could be inferred where the proximity between the protected activity and the adverse employment action was less than three months). Thus, Plaintiff has put forth sufficient evidence to support her retaliation claim. As Plaintiff has put forth sufficient evidence independent of her invocation of her Fifth Amendment rights, the Court does not find that the adverse inference against Plaintiff for invoking her Fifth Amendment privilege precludes her from establishing a prima facie case for retaliation. Accordingly, the burden shifts to Defendant to demonstrate by clear and convincing evidence that it would have terminated Plaintiff despite her participation in the protected activity.

Defendant argues that it would have terminated Plaintiff despite her complaints about the alleged lending violations because Plaintiff violated notary policy and improperly backdated loan documents. (ECF No. 25 at 9.) In support of its contention, Defendant relies on the alleged

7

backdated deed, the notary handbook which states that a notary cannot notarize documents without the individual present, and Defendant's "Retail Zero Tolerance List" which states that notarizing a document without the person being present could lead to termination. (*See* ECF No. 24-3 at 2 (Notarized Deed); ECF No. 24-6 at 8 (Notary Handbook); ECF No. 24-7 at 2 (Retail Zero Tolerance List).) Defendant also asserts that since March 2014 other employees similarly situated to Plaintiff have been terminated due to notarizing documents without the customer being present. (ECF No. 24-1 at 6.)

Plaintiff contends that Defendant's explanation for terminating her is pre-textual. In support of her claim, Plaintiff relies on affidavits from three employees[2] and the deposition of a Roop in which they each acknowledge that they have never known an employee in Plaintiff's position to be discharged for notary practices comparable to Plaintiff's. (*See* ECF No. 26 at 8.) For example, Roop states in his deposition that he does not know of any bankers that were terminated for similar practices as Plaintiff. (*See* ECF No. 26-3 at 16–18 (Roop Dep.).) This evidence rebuts Defendant's claim that other employees similarly situated to Plaintiff have been terminated for engaging in behavior similar to Plaintiff's. This along with Plaintiff's otherwise positive employment record and the proximity between Plaintiff engaging in the protected activity and her termination, raises the question whether Plaintiff engaging in the protected activity contributed to Defendant's decision to terminate her.

Thus, drawing inferences in the light most favorable to Plaintiff, the Court finds that a reasonable jury could find that Plaintiff's complaints regarding Defendant's alleged illegal loan

---

[2] Defendant spends much of its reply arguing that Plaintiff cannot rely on these affidavits because the affidavits are inadmissible. (*See* ECF No. 29 at 3–9.) However, as stated in the previous footnote of this memorandum opinion and order, the Court finds that the parts of the affidavits that do not contain hearsay are admissible. *See* supra n.1.

disbursement practices contributed to her termination. *See Perez v. Progenics Pharm, Inc.*, 965 F. Supp. 2d 353, 366 (S.D.N.Y. 2013) ("A plaintiff need not prove that [his] protected activity was the primary motivating factor in [his] termination, or that the employer's articulated reason was pretext in order to prevail." (internal quotation marks omitted) (quoting *Barker v. UBS AG*, 88 F. Supp. 2d 291, 300 (D. Conn. 2012))). Therefore, Defendant has failed to present uncontradicted clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of Plaintiff's complaints. As a genuine dispute of material fact exists as to whether Plaintiff's participation in the protected activity contributed to her termination, Defendant's motion for summary judgment is **DENIED IN PART** insofar as it seeks judgment as a matter of law on Plaintiff's Dodd-Frank retaliation claim.

B. *Common Law Retaliatory Discharge Claim*

In Count II of her Complaint, Plaintiff alleges a common law claim for retaliatory discharge. (*See* ECF No. 1 at ¶¶ 24–31.) In its motion for summary judgment, Defendant argues that Plaintiff's common law claim is preempted by her statutory claim. (*See* ECF No. 25 at 12–15.) Plaintiff does not address this issue anywhere in the briefing. Therefore, the Court finds that Plaintiff has waived this cause of action. *See Weller v. JP Morgan Chase Bank, N.A.*, No. 3:16-cv-110, 2017 WL 3581099, at *2 (N.D. W. Va. Aug. 18, 2017) (finding that the plaintiffs abandoned their claim because they failed to address defendant's arguments regarding that claim); *see also Bronitsky v. Bladen Healthcare, LLC*, No. 7:12–CV–147, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) ("Plaintiff's failure to oppose defendants' arguments made in support of their motion for summary judgment is fatal to plaintiff's claim."). Accordingly, Defendant's

motion is **GRANTED IN PART** insofar as it seeks judgment as a matter of law on Plaintiff's common law claim.

## IV.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS IN PART** Defendant's motion as to Plaintiff's common law retaliation claim, but **DENIES IN PART** Defendant's motion as to Plaintiff's Dodd-Frank retaliation claim.   (ECF No. 24.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    April 30, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE